Merrimack
No. 82-092

THE STATE OF NEW HAMPSHIRE

v.

LEONARD J. MERSKI

August 26, 1983

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief and orally), for the State.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*W. Michael Dunn, Stephen E. Weyl*, and *Debra L. Weiss* on the brief, and *Mr. Weyl* orally), for the defendant.

DUNN, J. (Sitting by special assignment pursuant to RSA 490:3.) The defendant appeals from a jury verdict in the Superior Court (*Souter*, J.) finding him guilty of theft by unauthorized taking, RSA 637:3. For the reasons set forth below, we uphold the trial court and affirm the defendant's conviction.

The Merrimack County Grand Jury on November 6, 1980, handed down an indictment which stated that the defendant

"did purposely obtain [$5,989.50], the property of Jane W. Brabitz, Executrix of the Estate of Evelyn R. Wells, with a purpose to withhold said money for so extended a period that a substantial portion of its economic value or of the use and benefit thereof would be lost, by withdrawing [$5,989.50] from Savings Account No. 01-006408-7 at the

Indian Head National Bank, without authority to do so, in violation [of RSA 637:3]."

The facts adduced at trial establish that in 1975, while the defendant was engaged in the practice of law in Concord, he was hired by Jane Brabitz to assist her in probating the will of her late mother, Evelyn Wells. The will established a testamentary trust and appointed Jane Brabitz as trustee for the benefit of Stacey Brabitz, the granddaughter of the deceased.

On March 15, 1977, the Merrimack County Probate Court (*Cushing*, J.) determined that Jane Brabitz had violated her duties as executrix by using part of the assets of the estate to purchase real estate in Concord. Accordingly, the court ordered that all the bank books, cash assets, checks and stocks of the estate be turned over to the defendant as the attorney for the executrix. The court further ordered that no expenditures were to be made from the estate's assets without the defendant's approval and countersignature. Judge Cushing, however, gave no authority to the defendant to withdraw any money at his own discretion from the estate's accounts.

On January 4, 1978, the defendant, in connection with another case, was ordered by the superior court to pay $5,989.50 to the clerk of the Merrimack County Superior Court. On January 18, 1978, the same amount was withdrawn from the savings account of the estate of Evelyn Wells in the Indian Head National Bank, in accordance with an authorization letter purportedly signed by Jane W. Brabitz and witnessed by the defendant. Pursuant to the authorization, a cashier's check in that amount was issued to the defendant payable to Henry Dowst, Jr., then Clerk of Court for Merrimack County Superior Court. Jane Brabitz testified that she did not sign the authorization, and that she had not given the defendant the authority to withdraw the funds. A handwriting expert produced at trial stated that he could not determine who signed the Brabitz name, but he did conclude that the signature of Leonard J. Merski was the actual signature of the defendant.

On August 1, 1978, the defendant resigned from the New Hampshire Bar. In early August, Jane Brabitz hired another attorney, Bruce Viles, to represent her and the Wells estate. Later, on August 10, 1978, the defendant spoke to Attorney Viles about the Wells estate. On that same date, the defendant deposited $4,000 into the savings account of the estate. In September 1978, Attorney Viles informed Brabitz of the earlier withdrawal of the $5,989.50. Until then, Brabitz testified, she had no knowledge of the withdrawal and had never seen the authorization letter to the Indian Head National

Bank. As of the date of the trial, the balance of $1,989.50 missing from the account had not been replaced. *See generally, State v. Merski,* 121 N.H. 901, 437 A.2d 710 (1981).

The defendant's trial on a charge of theft by unauthorized taking resulted in a guilty verdict, and he brought this appeal. The defendant argues that the trial court erred in not instructing the jury on a "lesser-included offense." Also, he maintains that the trial court abused its discretion in permitting the State to recall a witness during its case in chief, and that his motions to set aside the verdict and to order a new trial should have been granted. Finally, the defendant asks that this court reverse his conviction as being against the weight of the evidence.

The defendant's first exception concerns the trial court's failure to instruct the jury on the elements of the misdemeanor of misapplication of property, RSA 638:11. The defendant argues that this misdemeanor is a lesser-included offense to the principal charge of theft by unauthorized taking, and that the evidence warranted such an instruction.

 A defendant is entitled to an instruction on a lesser-included offense where counsel requests it and where such an instruction is compatible with the evidence adduced at trial. *State v. Boone,* 119 N.H. 594, 406 A.2d 113 (1979); *State v. O'Brien,* 114 N.H. 233, 235, 317 A.2d 783, 784 (1974). The defendant argues that since all the elements of the misdemeanor of misapplication were established at trial, and since the evidence was compatible with a finding of guilt on the misdemeanor instead of on the felony of theft by unauthorized taking, he was entitled to the requested instruction. This argument, however, begs the question of whether or not the crime of misapplication is a lesser-included offense of the crime of theft by unauthorized taking. We have never held that where the prosecution happens to prove, as part of its case on the offense charged, the commission of another offense, this alone requires an instruction to the jury on the non-charged offense. *Cf. Berra v. United States,* 351 U.S. 131, 134 (1956) (defendant not entitled to instruction on crime covering precisely the same ground as crime charged). To be entitled to an instruction on a given non-charged offense, all the essential elements of that offense must necessarily be included in the charged offense. *State v. Boone,* 119 N.H. at 597, 406 A.2d at 114. The test for whether an offense is a lesser-included offense with respect to an offense charged is whether a person must necessarily have committed that offense in the process of committing the offense charged. *See State v. von Klock,* 121 N.H. 697, 701, 433 A.2d 1299, 1302 (1981); *Berra v. United States,* 351 U.S. at 134.

■ All of the essential elements of the crime of misapplication of property are not subsumed within the definition of the crime of theft by unauthorized taking. *See generally*, MODEL PENAL CODE and commentaries § 224.13 n.8 (1980). To convict a person of misapplication, the prosecution must prove three elements which are not elements of theft by unauthorized taking: (1) the property was entrusted to the defendant as a fiduciary; (2) the defendant dealt with the entrusted property in a manner which he knew constituted a breach of his fiduciary duty; and (3) the defendant dealt with the entrusted property in a manner which he knew involved a substantial risk of loss to the owner of the property or to a person for whose benefit the property was entrusted. Since these three essential elements contained in the definition of misapplication are not contained within the definition of theft by unauthorized taking, a person need not have committed the former in the process of committing the latter. Therefore, an indictment accusing a defendant of violating the theft statute does not invoke the misdemeanor misapplication statute as a lesser-included offense. Consequently, the defendant was not entitled to the requested instruction.

The defendant next maintains that the trial court abused its discretion in permitting the State to recall Lauri Bush to testify during the State's case in chief. Lauri Bush was the defendant's secretary at his law office from January 1976 to April 1977. Her initial testimony established that she had not typed the authorization letter relative to the withdrawal of the $5,989.50 from the savings account of the estate of Evelyn Wells, and that on occasions the defendant had typed for himself. She also testified that she had not signed the authorization letter.

Later in the State's case, Jane Brabitz testified that before she purchased a house for herself with assets from her mother's estate in May 1976, she had consulted with the defendant regarding her ability to do this. She testified that the defendant told her that "there was not much they could do about it. They might slap your wrists, but there isn't anything more they can do about it." The testimony of Brabitz also established the crucial point that she had not given the defendant permission to withdraw the $5,989.50, nor had she signed the authorization letter.

On cross-examination, the defendant attempted to impeach Brabitz by seeking, *inter alia*, to establish that she had not consulted the defendant relative to the purchase of the house, prior to its actual purchase.

The State indicated to the trial court that Lauri Bush was being recalled for the purpose of testifying that during the period when she worked for the defendant, she overheard a conversation between him and Brabitz. The State further indicated that during this conversation, which took place before Brabitz purchased the house, Brabitz had asked the defendant whether it was proper under the will to buy the house. The trial court, in making its ruling to permit the witness to be recalled, observed that because the credibility of Brabitz was the linchpin of the State's case, it would allow Bush to testify for the purpose of helping the jury decide whether or not Brabitz had told the truth.

██ Superior Court Rule 69 provides: "After a witness has been dismissed from the stand, he cannot be recalled without permission of the Court." Accordingly, the issue of permitting a party to recall a witness is one whose resolution is purely within the discretion of the trial court. *See Dodge v. Clair*, 105 N.H. 276, 278, 198 A.2d 12, 14 (1964); *Severance v. Hilton*, 24 N.H. 147 (1881); *see also Sindorf v. Dow*, 112 N.H. 114, 117, 289 A.2d 394, 396 (1972). We find no abuse of discretion by the trial court in this regard.

██ The defendant on appeal also argues that the trial court abused its discretion in denying the defendant's motions to set aside the verdict and to order a new trial. RSA 526:1 provides that "[a] new trial may be granted in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." In his brief, the defendant points to the fact that the jury deliberated only twenty minutes, prior to finding him guilty, as indicating that justice has not been done. "Well may the court be dimm, . . . well may the fog hang heavy in it, . . . [and well may] the attendant wigs [be] stuck in a fog-bank," C. DICKENS, BLEAK HOUSE, *In Chancery*; still, we are not persuaded by this argument. *Cf. State v. Glidden*, 123 N.H. 126, 136, 459 A.2d 1136, 1142 (1982) ("There is no *per se* rule to determine how long is too long for a jury to deliberate. . . .") Accordingly, we rule that the trial court could reasonably have concluded that a different result would not likely obtain if a new trial were ordered.

██ Finally, viewing the evidence and all reasonable inferences derived therefrom most favorably to the State, we are satisfied that the evidence was sufficient to support a guilty verdict and that a jury could reasonably so find beyond a reasonble doubt. *State v. Glidden*, 123 N.H. at 135, 459 A.2d at 1142; *State v. Arillo*, 122 N.H. 107, 109, 441 A.2d 1163, 1164 (1982); *Jackson v. Virginia*, 443 U.S.

570

307, 319 (1979). Accordingly, the defendant's remaining exceptions are also overruled.

*Affirmed.*

DUNN, J., sat by special assignment under RSA 490:3; DOUGLAS, BROCK, and BATCHELDER, JJ., did not sit; the others concurred.