Rockingham
No. 7487

STATE OF NEW HAMPSHIRE

v.

JAMES J. SEELEY

December 30, 1976

*David H. Souter,* attorney general, and *Robert V. Johnson II,* assistant attorney general *(Mr. Johnson* orally), for the State.

*Barrett & McNeill* and *Leppo & Paris* (of Massachusetts) *(Mr. Martin K. Leppo* orally) for the defendant.

GRIMES, J.   Defendant seeks to set aside his conviction for burglary on several grounds, including the claims that the arresting officer had no probable cause, that his motion for mistrial should have been granted when his silence after the *Miranda* warnings was shown in evidence, that the court erred in allowing certain evidence to be introduced and in its failure to charge as requested. Defendant's exceptions were transferred by *Perkins,* J. We uphold the conviction.

The evidence shows that about five o'clock on the morning of September 12, 1974, Ring, a dispatcher in the sheriff's office of the Rockingham County Administration and Justice Buildings, heard shuffling sounds and whispering over the intercom system. He was able to locate the source of the sounds by a selector system. He called the local police and while he was doing so Mr. Luce, another employee, armed himself and went to investigate. As he approached the entrance to the basement garage, the area from which the sounds had come, he heard noises and saw two people running from the garage area. Each had a cardboard box in his hands. Luce yelled to halt or he would shoot. Both men looked at him and ran toward the woods. He fired warning shots, the men dropped the boxes, and continued running into the woods. In the path the men had followed in running away, Luce found a portable radio and two gunnysacks. He also found the boxes they had dropped. In the boxes he saw what appeared to be antiques, including a coffee tray and two mirrors which were being held as evidence against Richard Mallouf in a criminal action.

Deputy Sheriff Stone and others were called to the scene. Luce

told Stone and Deputy Sheriff Farrar what had occurred, showed them the boxes, told Stone that one of the men of medium height and slender build was wearing dungarees and an olive drab fatigue jacket. About 600 feet behind the building, Stone and Farrar came upon an automobile which they determined to belong to the defendant. At about nine o'clock that morning, Stone, while searching in the woods, saw a man "going to the ground." He went to him and inquired what he was doing there. The man stated that he "got cocked last night and went into the woods to relieve [himself] and must have passed out." The man met the description given Stone by Luce. Stone told him about the problem they had the night before and asked him to come along to the office. The person went with Stone to the sheriff's department and when asked for identification produced a Massachusetts driver's license with photograph showing him to be James J. Seeley. Stone then notified Deputy Sheriff Farrar that he had found the subject and Farrar came and read the *Miranda* warnings to him and tried to talk with him, but Seeley remained silent and asked for an attorney.

Farrar had been introduced to Seeley by Mallouf and therefore knew that they were acquainted. He also had some knowledge of locks and the picking of locks and had examined the locks in the building in the vicinity where entry had been made and determined that they had been picked. He had been told by Mallouf that Seeley was a "topnotch lock picker." After attempting to interview Seeley, Farrar advised him he was under arrest for burglary.

Seeley was then taken to the county jail. Deputy Sheriff Christie, who searched his outside jacket, found a lock pick in one of the pockets. Defendant moved to suppress this evidence on the basis that there was no probable cause for his arrest. It does not appear whether Stone took defendant into custody or whether defendant went voluntarily with him to the sheriff's office. It makes no difference, however, because no evidence was obtained from him during this time. *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968); *Sibron v. New York,* 392 U.S. 40, 62-66 (1968).

Deputy Sheriff Farrar at the time he placed defendant under arrest had ample information of his own and that he had obtained from other officers, *State v. Standish,* 116 N.H. 483, 363 A.2d 404 (1976); *United States v. Ventresca,* 380 U.S. 102 (1965), to constitute probable cause to make the arrest. *State v. Schofield,* 114 N.H. 454, 322 A.2d 603 (1974). At the time the evidence was obtained,

therefore, defendant was under a valid arrest and the admission of the evidence was proper. *See United States v. Edwards,* 415 U.S. 800 (1974).

Defendant argues that the trial court erred in admitting testimony of Deputy Sheriff Farrar that he had been introduced to the defendant by Mr. Mallouf in Somerville, Massachusetts, while he, Farrar, was working as an undercover agent. This evidence was admissible on the issue of motive because the items stolen were being held as evidence against Mallouf. The facts that defendant, although a resident of Somerville, was at the scene of the crime in New Hampshire, and that he was acquainted with Mallouf and that the items stolen were being held as evidence against Mallouf supplied strong circumstantial evidence against defendant. The evidence did not necessarily imply that defendant had a criminal record or was of bad character. Any possible prejudice was outweighed by its importance on the question of motive. *See* 1 C. Torcia, Wharton's Criminal Evidence § 170 (13th ed. 1972).

During the trial, Deputy Sheriff Farrar testified that after defendant's arrest he saw him "sitting there" and that he advised him "of his rights" and "tried to discuss the situation with him. He remained silent." Defendant moved for a mistrial, which was denied in favor of a limiting instruction as suggested by the prosecutor. Of course the prosecution may not use against him defendant's silence "in the face of accusation" after the *Miranda* warnings have been given. *Miranda v. Arizona,* 384 U.S. 436, 468 n.37 (1966). *See also Doyle v. Ohio,* 96 S. Ct. 2240 (1976). The trial court so ruled and instructed the jury to disregard the evidence. We are of the opinion that this sufficiently removed any prejudice so that a mistrial was properly denied. *State v. Booton,* 114 N.H. 750, 329 A.2d 376 (1974); *Boeckenhaupt v. United States,* 392 F.2d 24 (4th Cir. 1968).

Defendant claims that the court erred in allowing Deputy Sheriff Farrar to testify concerning his examination of locks which had been forced open and in allowing Deputy Sheriff Christie to identify a metal object taken from defendant as a "lock pick" because neither qualified as an expert. Farrar testified that he had always been interested in locks and picking locks and that he had worked with locksmiths, had a set of picking tools and had practiced picking locks. He also testified that he had purchased and borrowed books to understand locks and could tell "whether a lock had been picked or not." Christie testified that he had seen pictures of lock picks and had "seen them in actuality." It cannot

be said that these men did not have more knowledge of the subjects than the average juror would be expected to have and that their testimony would not aid the jury. *See Gauthier v. Bergeron,* 107 N.H. 153, 218 A.2d 433 (1966); *Cormier v. Conduff,* 109 N.H. 19, 241 A.2d 795 (1968).

Defendant further complains because he was not permitted to impeach a state's witness by the use of a deposition of another witness. Officer Luce on cross-examination by defendant testified that he gave a description of the two men seen running from the scene. He was shown the deposition of Deputy Sheriff Farrar and then asked if he told Farrar one of them was wearing khaki clothing. He replied that he did not. Counsel then asked if the answer in Farrar's deposition stated that he told Farrar one was wearing khaki clothing. At this point the State objected and the objection was sustained.

This ruling was within the discretion of the trial court. RSA 517:13. Farrar was available as a witness and could have been called by defendant.

Defendant's final claim is that the trial court erred in not instructing the jury that mere presence in the vicinity of a crime does not indicate guilt. Defendant's counsel was allowed to argue this but it was not mentioned in the charge to the jury, nor was it requested before the instruction although it was requested after the instructions were completed. Rule 60 (f) of the Superior Court (RSA 491:App. R. 60 (f) (Supp. 1975)) requires that requests for instructions be submitted before trial and supplemental requests will be accepted at trial only for good cause shown. Here no request was made until after the charge had been given. Moreover, this was not a case of mere presence, as the State had substantial other evidence of defendant's guilt, some of which has already been related above, and we fail to see how defendant could have been prejudiced by the omission.

*Exceptions overruled.*

All concurred.